IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIFESTYLE SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-01290-JRG-RSP |
| | § | |
| ABBYSON LIVING LLC and | § | |
| ABBYSON LIVING CORP., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In this design patent case, the Court will now consider Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, In the Alternative, to Transfer [Dkt. # 10]. For the reasons set forth below, the Court will **GRANT** Defendants' motion and transfer this matter to the Central District of California (Central California) pursuant to 28 U.S.C. § 1404(a). The Court will not address whether venue is proper or the issue of personal jurisdiction.[1]

---

[1] A court with subject matter jurisdiction has authority to transfer under 28 U.S.C. § 1404(a) or § 1406(a) without addressing the question of personal jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (addressing the issue with respect to § 1406(a)); *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297–98 (5th Cir. 1963) (addressing the issue with respect to § 1404(a)); *see also Aguacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978). Also, the Fifth Circuit permits district courts to transfer a case under § 1404(a) or § 1406(a) without deciding whether

## I. BACKGROUND

On November 22, 2016, Lifestyle Solutions, Inc. filed this lawsuit against Abbyson Living LLC and Abbyson Living Corp. Lifestyle's complaint alleges infringement of U.S. Design Patent D610,366, titled "Sofa Bed With Multiple Positions." The '366 Patent identifies Abedan Kanthasamy of Kuala Lumpur, Malaysia as the inventor and Lifestyle as the assignee.

Lifestyle served Defendants on February 14, 2017. Summons [Dkt. # 6, 7]. In their first (and so far only) defensive move, Defendants filed the present motion on April 7 challenging personal jurisdiction, propriety of venue, and convenience of venue. Defs.' Motion [Dkt. # 10]. Defendants have yet to answer the Complaint.

None of the parties to this case is a Texas entity. Lifestyle is a California corporation. Compl. [Dkt. # 1] ¶ 1. Abbyson LLC is a Delaware limited liability company. *Id.* ¶ 2. Abbyson Corp. is a Nevada corporation. *Id.*

Both Lifestyle and Defendants are headquartered in California. Lifestyle's principal place of business is in Fremont, which is in the Northern District of California. Compl. [Dkt. # 1] ¶ 1. Defendants share a headquarters in Moorpark, which is in Central California. Rafieha Decl. (Apr. 7, 2017) [Dkt. # 10-1] ¶ 2. Defendants also have showrooms in Nevada and North Carolina, Abbyson's Website [Dkt. # 16-2] at B-3, but have no employees outside of Central California. Rafieha Decl. (Apr. 7, 2017) [Dkt. # 10-1] ¶¶ 7–8.

---

venue is proper. *See, e.g.*, *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985); *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1103–07 (5th Cir. 1981).

Defendants lease space at two distribution centers, both of which are in Central California. Rafieha Decl. (Apr. 7, 2017) [Dkt. # 10-1] ¶¶ 3–4. These distribution centers are owned by Weber Logistics, which is headquartered in Central California, and Updike Distribution Logistics, which is headquartered in Phoenix. Johnson Decl. (Apr. 7, 2017) [Dkt. # 10-2] ¶¶ 5–6. All of Abbyson's products sold and shipped in the United States are housed at either Abbyson's headquarters in Moorpark or at one of the third-party distribution centers. Rafieha Decl. (Apr. 7, 2017) [Dkt. # 10-1] ¶ 4.

Defendants do not sell their products directly to consumers, but instead offer products through third-party retailer websites. *Id*. ¶ 17. When an Abbyson product is purchased through a third-party retailer's website, the retailer arranges for a shipper to retrieve the purchased product from one of the California distribution centers and ship it to the customer. *Id.*

## II. APPLICABLE LAW

Regardless of whether the plaintiff's chosen venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. § 1404(a). A court should grant a motion to transfer under § 1404(a) if the transferee venue is clearly more convenient than the plaintiff's chosen venue. *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The Fifth Circuit applies the "public" and "private" factors for determining forum *non conveniens* when deciding a § 1404(a) question. *In re Volkswagen*, 545 F.3d at 314 n.9.

The "private" interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The "public" interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *In re Volkswagen,* 545 F.3d at 315.

The plaintiff's choice of venue is not a factor in this analysis. *Id.* at 314–15; *id.* at 314 n.10. Instead, the plaintiff's choice of venue contributes to the defendant's burden in proving the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). And though the private and public factors apply to most transfer cases, they are not exhaustive or exclusive and no single factor is dispositive. *In re Volkswagen*, 545 F.3d at 315.

"Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.,* 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (2014)).

### III. DISCUSSION

#### A. Whether this case could have been brought in the Central District of California.

Defendants are headquartered, and have a regular and established place of business,

in Central California. Given the alleged nationwide acts of infringement, this case could have been brought in that forum under 28 U.S.C. § 1400(b).

### B. The Private Interest Factors

*(1) the relative ease of access to sources of proof*

Courts analyze this factor in light of the distance that evidence must be transported to the trial venue. *See In re Volkswagen*, 545 F.3d at 316; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (presuming the bulk of the discovery material relating to a corporate party is located at the corporate headquarters); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (noting the bulk of the relevant evidence in patent infringement cases usually comes from the accused infringer). *But see In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009) (noting that documents moved to a particular venue in anticipation of a venue dispute should not be considered).

Here, the bulk of relevant evidence will likely come from Defendants as the accused infringers. The Court presumes the bulk of discovery material relating to Defendants is at their corporate headquarters in Moorpark. Defendants bolster that presumption with evidence that (1) their relevant documents and electronically stored information are located at their headquarters; and (2) Defendants do not store documents outside of Central California. Rafeiha Decl. (Apr. 7, 2017) [Dkt. # 10-1] ¶ 6.

In response, Lifestyle first argues Defendants' documents would be easily transferable in electronic form. Pl.'s Resp. [Dkt. # 16] at 21–22. Secondarily, Lifestyle suggests a significant number of documents will be needed and available from national retailers with

headquarters across the country, most of which are closer to this District than Central California. *Id.* at 22–23; *see also id.* at 4 (naming, among others, Sam's Club, Nordstrom, Amazon, and Bed Bath & Beyond). Thus, argues Lifestyle, this factor weighs against transfer.

The Court rejects Lifestyle's position for two reasons. First, the Fifth Circuit has cautioned against rendering analysis of this factor superfluous simply because technologi-cal advancements, such as storing and transferring documents in electronic form, makes this a lesser inconvenience. *In re Volkswagen*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). Second, the Court anticipates any such third-party documents and evidence would be merely cumulative of Defendants' own documents and information.

Instead, this factor weighs in favor of transfer. Defendants' documents are in Central California, as are any relevant documents of at least one, if not both, of the third-party distribution centers. And to the extent any relevant documents of Updike are at its Phoenix headquarters, those documents are significantly closer to Central California than this District.

>    *(2)   the availability of compulsory process to secure the attendance of witnesses*

Defendants identify employees of Weber and Updike as likely third-party witnesses. *See* Rafeiha Decl. (Apr. 7, 2017) [Dkt. # 10-1] ¶ 5. Weber is based in Central California.

Johnson Decl. (Apr. 7, 2017) [Dkt. # 10-2] ¶ 5. Updike's corporate offices are located in Phoenix, although most of its locations are in California. *Id.* ¶ 6.

In arguing this factor weighs against transfer, Lifestyle again relies on the presence of national third-party retailers in this District and throughout the country. Pl.'s Resp. [Dkt. # 16-2] ¶ 58. Lifestyle also notes that Updike may have a location in Virginia and that Kanthasamy (in Malaysia) is outside the range of compulsory process of Central California. *Id.* ¶¶ 61, 62. Finally, Lifestyle relies on the ability to use deposition testimony at trial. *Id.* ¶ 64.

Here, too, the Court rejects Lifestyle's position. Although Lifestyle criticizes Defendants' characterization of two distribution centers as the "primary" third-party witnesses, those distribution centers are closer to the key facts of this case than Defendants' national retailers. At the very least, the distribution centers take possession of the allegedly infringing products, whereas the third-party retailers do not. Moreover, Weber's and Updike's locations outside of California are irrelevant to the Court's analysis given that no such locations are in this District. And Kanthasamy is outside the scope of compulsory process of both forums.

As between the two venues at issue, Central California has absolute subpoena power over the parties,[2] their employees, and the California employees of the distribution centers

---

[2] Even though Lifestyle is located in Northern California, Fed. R. Civ. P. 45(c) requires compliance with a trial subpoena within the state where a person resides if the person is a party, a party's officer, or if the person would not incur substantial expense in attending the trial.

where the accused products are stored and shipped. *See In re Volkswagen*, 545 F.3d at 316 (considering "absolute subpoena power" when applying of this factor). The same cannot be said for this District, which weighs this factor in favor of transfer.

### (3) the cost of attendance for willing witnesses

A court should analyze this factor by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen*, 371 F.3d 201, 204 (5th Cir. 2004). The court should consider all potential material and relevant witnesses, regardless of the likelihood of their being called to testify at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). In addition, this factor weighs heavily for transfer when more third-party witnesses reside in the transferee venue than the transferor venue. *In re Apple, Inc.*, 581 Fed. Appx. 886, 889 (Fed. Cir. 2014).

Lifestyle argues that, given the national scope of the third-party retailers, this District is more convenient for the parties and witnesses because it is centrally located. Pl.'s Resp. [Dkt. # 16] ¶ 44. The Federal Circuit, however, has rejected that reasoning when, as here, there are no witnesses that reside within the plaintiff's chosen venue. *See In re Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009).

This factor weighs in favor of transfer. Should they be willing to attend trial, Lifestyle, Defendants, their respective employees, and the identified third-party distribution centers (and their employees) would all incur significantly lower costs given their location

within or near the Central District of California.[3,4]

> *(4) all other practical problems that make a trial easy, expeditious and inexpensive*

This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *see also Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 25 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent."). The "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220–21 (7th Cir. 1986)).

Lifestyle argues the Court's expediency, efficiency, and familiarity with patent infringement lawsuits weighs against transfer, Pl.'s Resp. [Dkt. # 16] ¶ 71, but those characteristics are more appropriately considered in analysis of the public interest factors. Here,

---

[3] To the extent personnel from Updike's Phoenix headquarters choose to attend, Phoenix is significantly closer to the Central District than to Marshall.

[4] The Court discounts the inventor in its analysis of this factor given that he would have to travel a significant distance regardless of the chosen venue. *See In re Genentech*, 566 F.3d at 1345–46 (discounting European witnesses and documents transported from Washington D.C. in the analysis when reviewing a denial of transfer from Texas to California). But even so, a trip from Kuala Lumpur to Los Angeles would be just as convenient—if not more convenient—than a trip to Marshall.

there are not any potentially duplicative suits, and so far the Court has not expended considerable resources managing this case. This factor is neutral.

### C. The Public Interest Factors

#### *(1) the administrative difficulties flowing from court congestion*

This factor considers the speed with which a case may be resolved in the plaintiff's chosen venue and in the proposed transferee venue. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Generally, this factor weighs in favor of the venue with the faster time to trial, but the speed of the transferee district court should not alone outweigh the other factors. *Id.*

According to the judiciary, at the time Lifestyle filed this lawsuit, the median time from filing to trial in civil cases was roughly nineteen months in both forums. http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2016.pdf at 35 (Texas Eastern), 68 (California Central). Thus, this factor is neutral.

#### *(2) the local interest in having localized interests decided at home*

This factor considers the connection of the chosen venue's locality to the events giving rise to the suit. *See In re Volkswagen*, 371 F.3d at 205–06; *In re TS Tech*, 551 F.3d at 1321 (concluding where the accused products were sold nationally, the citizens of this District had no more or less of a meaningful connection to the case than any other venue). After all, "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation." *In re Volkswagen*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue. *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). But if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor. *Id.* For example, when the company asserting harm and many of the companies alleged to cause the harm are all residents of that district as are the inventor and the patent prosecuting attorney whose work may be questioned at trial, the local interest favors transfer. *Id.*

Here, Defendants are headquartered in Central California. The accused products are stored and distributed from that district by third parties headquartered or operating in that district. In contrast, there are no such interests specific to this District. This factor weighs in favor of transfer.

> *(3) the familiarity of the forum with the law that will govern the case*

Patent claims are governed by federal law, and both courts are capable of applying that law to infringement claims. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320. This factor is neutral.

> *(4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law*

The parties agree this factor is neutral.

## IV.   CONCLUSION AND ORDER

On balance, the factors weigh in favor of transfer, even if venue is proper in this District. Accordingly, the Court **GRANTS** Defendants' motion and **ORDERS** the Clerk to transfer this case to the Central District of California.

**SIGNED this 10th day of November, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE